

# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

**MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE**
**50 WALNUT STREET, P.O. BOX 419**
**NEWARK, NJ 07101-0419**
**(973) 645-6340**

**WILLIAM J. MARTINI**
  **JUDGE**

August 1, 2005

## LETTER OPINION

**VIA REGULAR MAIL**

Mandelbaum, Salsburg, Gold, Lazris, Discenza & Steinberg, P.C.
Stuart Gold, Esq.
155 Prospect Avenue
West Orange, NJ 07052

  (*Attorney for Plaintiff*)

St. John & Wayne
Vincent S. Ziccolella, Esq.
Two Penn Plaza East
Newark, NJ 07105-2249

  (*Attorney for Defendant*)

  **Re:  Tumi, Inc. v. Excel Corp., et al.**
     **Docket No.: 05-0477 (WJM)**

Dear Counsel:

This matter comes before the Court on Defendant Excelcorp's[1] motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). There was no oral argument. Fed. R. Civ. P. 78. For the reasons set forth below, the motion is **GRANTED IN PART** and **DENIED IN PART**. Accordingly, Count Five is **DISMISSED WITHOUT PREJUDICE.**

## BACKGROUND

This action, before this Court on allegations of diversity jurisdiction under 28 U.S.C. § 1332, was commenced on or about January 24, 2005 by Plaintiff Tumi, Inc. ("Tumi"), a New Jersey corporation with its principal place of business in New Jersey, against Excelcorp, a Nevada corporation with its principal place of business in Nevada. (*See* Compl. ¶¶ 1–4.) It is

---

   [1]   Excelcorp states in its papers that it is incorrectly identified as "Excel Corp." in this action. For ease of reference, the Court will refer to it as "Excelcorp" herein.

also brought against unnamed Defendants John Does 1–20, Jane Roes 1–20, and ABC COS. 1–20 (referred to collectively herein as "unnamed Defendants"). (*See id*. ¶¶ 5–7.) The action arises out of Excelcorp's purported breach of a contract with Tumi concerning Excelcorp's participation in Tumi's so-called "Special Markets Program." (*See generally id.* ¶¶ 1–19.) The following are the relevant allegations.

Tumi's business consists of manufacturing and distributing globally recognized "luggage, leather goods, business cases, personal leather goods, women's products and related executive accessories" marketed under its name. (*See id.* ¶ 8.) It distributes and sells its merchandise primarily through high-end department stores, luggage speciality stores, Tumi-owned stores, dealer-operated Tumi stores, and Tumi shops located in or at other retail establishments. (*See id.* ¶ 9.) However, Tumi also markets and sells its products through entities participating in its "Special Markets Program," under which program participants may sell Tumi products to corporations or other groups for their "internal use"—that is, participating entities may not simply resell the Tumi products on the market. (*See id.* ¶¶ 10–11.) Not surprisingly, Tumi engraves its products and traces their circulation in commerce pursuant to its so-called "Tumi Tracer Program." (*See id.* ¶ 12.)

On or about March 25, 2004, Excelcorp executed and delivered to Tumi a "Special Markets Memo" detailing the terms and conditions of its participation in Tumi's Special Markets Program. (*See id.* ¶¶ 15–16.) Under the terms of the Special Markets Memo, Excelcorp was prohibited from selling or trans-shipping Tumi merchandise received under the Special Markets Program to groups of end-users other than those approved by Tumi. (*See id*. ¶ 15.) The Special Markets Memo, as delivered to Excelcorp, also provided that Tumi would be entitled to certain liquidated damages and could immediately terminate the agreement if Excelcorp sold or transshipped Tumi products to unauthorized end-users. (*See id.*) However, allegedly unbeknownst to Tumi, Excelcorp altered the terms of the Memo upon execution such that, counter to the Memo's original terms: (1) Excelcorp would *not* be liable to Tumi for liquidated damages; and (2) Tumi would *not* have the right to immediately terminate the premium account arrangement if Excelcorp sold or trans-shipped Tumi products to unauthorized end-users. (*See id. ¶* 16.)

A few months later, between August and October 2004, Tumi, oblivious to Excelcorp's changes to the Memo, sold $100,000 worth of products to Excelcorp. (*See id.* ¶ 17.) Sometime thereafter, Tumi learned (by means of the Tumi Tracer Program) that products obtained by Excelcorp under the Special Markets Program and pursuant to Excelcorp's Special Markets Memo were being offered for sale by Costco-Japan, an unauthorized dealer. (*See id.* ¶ 18.) Tumi also learned that Tumi products obtained by Excelcorp from unnamed Defendants were being offered for sale by Costco-Japan. (*See id.* ¶ 19.) This not only violated the terms of Excelorp's and the unnamed Defendants' participation in the Special Markets Program (*see id*. ¶¶ 22, 41), it also allegedly interfered with Tumi's agreements with certain Japanese businesses regarding the distribution of Tumi products in Japan (*see id*. ¶ 26). Specifically, throughout the relevant time period, Tumi had an on-going joint venture agreement ("Japan Agreement") with two Japanese corporations—Ace Co., Ltd. ("Ace") and Itochu Co. ("Itochu")—for the distribution and sale of Tumi merchandise in Japan. (*See id. ¶* 13.) These agreements made Itochu the exclusive importer and Tumi Japan the exclusive distributor of Tumi products in Japan. (*See id. ¶* 14.)

Excelcorp allegedly sold its Tumi products to Costco-Japan knowing that Tumi "had an exclusive arrangement for [the] sale and distribution of its products in Japan." (*See Id.* ¶ 28.)

Based on these allegations, Tumi asserts four state law causes of action for breach of contract, tortious interference with contract, fraudulent misrepresentation, and conspiracy. (*See id.* ¶¶ 20–42.) It seeks damages, costs, attorneys' fees, and injunctive relief. (*See id.* ¶¶ 24, 31, 37, 39, 42.) Excelcorp now moves to dismiss the Complaint in its entirety. (*See generally* Memorandum of Law in Support of Defendant Excelcorp's Motion to Dismiss Plaintiff Tumi, Inc.'s Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [hereinafter "Def.'s Mem."].)

## ANALYSIS

### I. Standard of Review

In deciding a motion to dismiss under Rule 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975). A court may dismiss a complaint for failure to state a claim only if, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Zynn v. O'Donnell*, 688 F.2d 940, 941 (3d Cir. 1982).

Because Excelcorp raised in its reply papers numerous (meritless) arguments for dismissal not raised in its original moving papers, the Court notes that these arguments are inappropriate for consideration on adjudication of this motion. *See, e.g.*, *Solid Waste Transfer and Recycling, Inc. v. County of Essex*, No. 98-2990, 1999 U.S. Dist. LEXIS 17867, at *40 (D.N.J. Oct. 26, 1999) (declining to consider new arguments raised initially on reply); *Schiffli Embroidery Workers Pension Fund v. Ryan, Beck & Co.,* 869 F. Supp. 278, 281 (D.N.J. 1994) (same, "for the obvious reason that the opponent has no opportunity to respond"). In addition, the Court will not consider the affidavit accompanying Defendant's reply papers, as, given the nature of the asserted bases for dismissal, it has no bearing on the Court's review of the adequacy of the Tumi's Complaint. *See, e.g.*, *Friedman v. Landsdale Parking Authority*, 151 F.R.D. 42, 44 (E.D. Pa. 1993) (declining to consider exhibits attached to motion to dismiss not referenced in complaint).

### II. The Motion to Dismiss Count One (Breach of Contract) is DENIED

Count One alleges that Excelcorp breached the terms of the Special Markets Memo by trans-shipping Tumi goods to end-user(s) not approved by Tumi. (*See* Compl. ¶¶ 20–24.) Excelcorp argues that the Court should dismiss this Count because the Complaint alleges that Excelcorp rejected the liquidated damages provision of the Special Markets Memo. (*See* Def.'s Mem. at 10.) Excelcorp's argument is without merit.

In a breach of contract action, a plaintiff "satisfies its pleading requirements if it alleges: (1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that plaintiff

performed its own contractual duties." *Pub. Serv. Enter. Group, Inc. v. Philadelphia Elec. Co.*, 722 F. Supp. 184, 219 (D.N.J. 1989) (applying New Jersey law).[2]  In this case, the Complaint alleges, in relevant part:

- *A contract*. That Excelcorp executed a Special Markets Memo "as a precondition of . . . participation in the Special Markets Program" and that the Memo "clearly prohibits the distribution of sale of Tumi brand products to any person or entity other than those identified as an end user under the Special Markets Program." (Compl. ¶ 15–16, 21.)
- *Breach of contract*. That Excelcorp breached its agreement with Tumi by selling Tumi products to "one or more unauthorized dealers." (*Id.* ¶¶ 18, 22.)
- *Damages.* That Excelcorp damaged Tumi's business by breaching its agreement. (*See id.* ¶ 24.)
- *Tumi's contractual duties.* That Tumi fulfilled its obligations under the agreement. (*See Id.* ¶ 23.) Specifically, that Tumi sent $100, 000 worth of its products to Excelcorp (*See Id.* ¶ 17.)

These pleadings adequately state a claim for a breach of contract.  Excelcorp's contention that this Count should be dismissed simply because Excelcorp is alleged to have rejected the liquidated damages provision of the Special Markets Memo is irrelevant, as Tumi may be entitled to other damages should it succeed on its breach of contract claim.  Therefore, the motion to dismiss Count One is **DENIED**.

### III. The Motion to Dismiss Count Two (Tortious Interference) Is DENIED

Count Two alleges that Excelcorp tortiously interfered with Tumi's import and distribution agreements with Itochu and Ace by selling Tumi products to an unauthorized dealer in Japan knowing that such sales would interfere with these agreements.  (*See* Compl. ¶¶ 25–31.) Excelcorp argues that the Court should dismiss this Count because Tumi's allegations in support of the Count: (1) are "conclusory" as to Tumi's exclusive relationship with Ace and Itochu; (2) fail to establish that Excelcorp committed any specific actions to interfere with the Ace and Itochu contracts; (3) fail to detail Excelcorp's awareness of Tumi's relationship with Ace and Itochu; and (4) fail to specify Excelcorp's state of mind with respect to Excelcorp's alleged interference.  (*See* Def.'s Mem. at 11–13; Reply Memorandum of Law in Further Support of Defendant Excelcorp's Motion to Dismiss Plaintiff Tumi, Inc.'s Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) at 8–9 [hereinafter "Def.'s Reply"].)  In light of the allegations in the Complaint discussed below, Excelcorp's arguments are devoid of merit.

To make out a claim for tortious interference, a plaintiff need allege only that: (1) plaintiff had a protected right from a prospective economic or contractual relationship; (2) defendant interfered intentionally and maliciously with that contract or prospective economic right; (3) defendant caused the loss of a prospective gain as a result from the interference; and (4) plaintiff

---

[2]  The parties have not disputed the applicability of New Jersey law to these state law claims.

was damaged.  *See Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 37 (N.J. 1989).  Malice in this context refers to "harm . . . inflicted intentionally and without justification or excuse." *Id.* (quoting *Rainier's Dairies v. Raritan Valley Farms, Inc.*, 117 A.2d 889, 895 (N.J. 1955)).  In this case, the Complaint alleges, in relevant part:

•     *Protected right.*  That Tumi had agreements with Ace and Itochu making Itochu its exclusive importer and Tumi Japan its exclusive distributor of Tumi brand products in Japan.  (*See* Compl. ¶ 13–14.)
•     *Intentional and malicious interference.*  That Excelcorp was aware of Tumi's exclusive arrangement for the sale and distribution of its products in Japan but nevertheless sold Tumi goods to Costco-Japan.  (*See id.* ¶¶ 18, 28–29.)
•     *Causation & Damage.*  That Excelcorp's "unlawful and improper distribution and/or sale" of Tumi goods in Japan caused Tumi irreparable damage and deprived Tumi the benefit of its agreements with Ace and Itochu.  (*See id.* ¶¶ 30–31.)

The Court is satisfied that these allegations adequately state a claim for tortious interference.  Excelcorp's qualms with the specificity of the allegations supporting this Count provide no basis for dismissal of this claim at this time, as Excelcorp has not cited (nor has the Court discovered) any authority requiring any more specificity than that provided in the Complaint.  Excelcorp's motion to dismiss Count Two is, therefore, **DENIED.**

**IV.     The Motion to Dismiss Count Three (Fraudulent Misrepresentation) is DENIED**

Count Three alleges that Exelcorp committed fraudulent misrepresentation by misrepresenting its intent to abide by the terms of the Special Markets Memo—specifically, its agreement not to distribute or sell its Tumi products to unauthorized end-users.  (*See* Compl. ¶¶ 32–37.)  Excelcorp argues that the Court should dismiss this Count because the pleadings fail to satisfy the requirements of Federal Rule of Civil Procedure 9(b).  (*See* Def.'s Mem. at 14.)  Specifically, Excelcorp argues that the Complaint fails to plead the date, time, and place of the alleged misrepresentation.  (*See id.*)[3]  This is, however, no basis for dismissing Count Three.

To make out a claim for fraudulent misrepresentation, a plaintiff need allege only: (1) a material misrepresentation of a present fact; (2) defendant's knowledge of its falsity; (3) "intention that the other person rely on [the misrepresentation]"; (4) reasonable reliance; and (5) damages as a result of the misrepresentation.  *See Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997).  Although Rule 9(b) requires that any circumstances constituting fraud be pleaded with some degree of particularity, the rule provides that malice, intent, and other conditions of mind may be averred generally.  *See* Fed. R. Civ. R. 9(b).  A plaintiff may satisfy Rule 9(b) by pleading the "date, place or time" of the fraud *or* through "alternative means of

---

[3]     Excelcorp also argues that the Complaint fails to allege that it made an "incorrect statement" or engaged in a "negligent making." (*See* Def.'s Mem. at 14.)  The Court will not address this argument, as it responds to a claim (negligent misrepresentation) not asserted by Tumi.

injecting precision and some measure of substantiation into their allegations of fraud." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). Accordingly, a complaint need not "describe the precise words used" so long as each allegation of fraud "adequately describes the nature and subject of the alleged misrepresentation." *Id*. In fact, contrary to Exelcorp's unsupported contention, "Rule 9(b) falls short of requiring every material detail of the fraud such as date, location, and time." *See Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)).

In this case, the Complaint alleges, in relevant part:

- *Material misrepresentation of a present fact.* That, although Excelcorp executed a Special Markets Memo agreeing to distribute Tumi products only to approved end-users, Excelcorp had no intent to abide by that agreement. (*See* Compl. ¶ 33.)
- *Knowledge of falsity.* Excelcorp entered into the agreement with Tumi knowing that "it would not abide by the terms and conditions of the agreement." (*Id.* ¶ 34.)
- *Intent that the other person rely on misrepresentation.* Excelcorp signed and returned the Memo with the intent that Tumi would rely on the terms of the agreement. (*See id.* ¶ 35.)
- *Reasonable reliance.* Tumi relied on Excelcorp's representations and "had no reason to expect that [Excelcorp] would intentionally breach its agreement." (*Id.* ¶ 36.)
- *Damages.* Excelcorp's fraudulent misrepresentation damaged Tumi. (*See Id.* ¶ 37.)

These allegations satisfy Rule 9(b)'s pleading requirements. That is, they are sufficient "to place [Excelcorp] on notice of the precise misconduct with which [it is] charged, and to safeguard [Excelcorp] against spurious charges of immoral and fraudulent behavior." *Seville*, 742 F.2d at 791. Accordingly, Excelcorp's motion to dismiss Count Three is **DENIED**.

### V.     The Motion to Dismiss Count Four (Injunctive Relief) Is DENIED

Tumi seeks temporary, preliminary, and permanent injunctive relief in Count Four based on the claims it asserts in Counts One through Three. (*See* Compl. ¶¶ 38–39.) Bizarrely, Excelcorp, addressing the standard for obtaining preliminary injunctive relief, argues that the Court should dismiss this Count because Tumi has not demonstrated a likelihood of success on the merits of its case. (*See* Def.'s Mem. at 15–16; Def.'s Reply at 10.) There is, however, no application for preliminary injunctive relief before the Court at this time. Thus, Excelcorp's arguments regarding Tumi's failure to make the showings necessary to obtain preliminary injunctive relief are irrelevant. Accordingly, Excelcorp's motion to dismiss Count Four is **DENIED**.

### VI.    The Motion to Dismiss Count Five (Conspiracy) is GRANTED

Count Five alleges that Excelcorp "conspired" with the unnamed Defendants to obtain from them Tumi products for unauthorized trans-shipment, in violation of Excelcorp's agreement with Tumi and in violation of these unnamed Defendants' agreements with Tumi. (*See* Compl. ¶¶ 40–42.) Excelcorp argues that the Court should dismiss this Count because it is not alleged

with the requisite particularity or, alternatively, because this Count is predicated on Counts One (breach of contract) and Two (tortious interference), both of which also must be dismissed. (*See* Def.'s Mem. at 16–17; Def.'s Reply at 10.)   The Court agrees that this Count must be dismissed for failing to adequately plead a conspiracy claim.[4]

To make out a claim for civil conspiracy, a plaintiff must allege: (1) an affiliation of two or more parties; (2) *having a common design or real agreement*; (3) to achieve an unlawful purpose or to achieve a lawful purpose by unlawful means; and (4) that proximately causes plaintiff to suffer damages.  *See Bd. of Educ. v. Hoek*, 168 A.2d 829, 835 (N.J. Super. Ct. App. Div. 1961), *rev'd in part on other grounds*, 183 A.2d 633 (N.J. 1962); *Delbridge v. Office of Public Defender*, 569 A.2d 854, 866–67 (N.J. Super. Ct. 1989).  Although a plaintiff need not plead direct evidence of the agreement between the conspirators, a plaintiff must *at least* plead circumstantial facts supporting the logical inference that the alleged conspirators had a meeting of the minds and thus reached an understanding to work towards a common goal.  *Morgan v. Union County Bd. Of Chosen Freeholders*, 633 A.2d 985, 988 (N.J. Super. Ct. App. Div. 1993). Moreover, although allegations of conspiracy are measured under the liberal Rule 8 pleading standard, conclusory allegations of conspiracy are insufficient to state a cause of action where the Complaint fails to allege "facts constituting the conspiracy, its object and accomplishment." *Black v. Yates v. Mahogany Ass'n Inc.*, 129 F. 2d 227, 231 (3d Cir. 1942).

Count Five fails to meet these pleading requirements.  The Complaint sets out the conspiracy allegations in a single count, as follows:  "The defendant, Excel, conspired with John Does 1-20, Jane Roes 1-20 and/or ABC Cos. 1-20 in order to obtain Tumi products from these individuals or entities, in contravention of agreements between Tumi and Excel and between Tumi and these other individuals or entities, with the intent to obtain Tumi products for trans-shipment in violation of the various agreements."  (Compl. ¶ 41.)[5]   These allegations fail, however, to set forth any factual basis that could support a logical inference that Excelcorp and the unnamed Defendants had any "meeting of the minds" or that they reached any understanding to work towards a common goal.  The Complaint merely alleges in a conclusory fashion that Excelcorp and the unnamed Defendants "conspired" with one another.  For this reason, Excelcorp's motion to dismiss this conspiracy claim is **GRANTED**.  Accordingly, Count Five is **DISMISSED WITHOUT PREJUDICE**.

---

[4] As explained above, Tumi has sufficiently plead Counts One (breach of contract) and Two (tortious interference).

[5] The paragraphs of the Complaint devoted to identifying the parties state that the unnamed Defendants are those entities that "conspired and acted in concert" with Excelcorp to "harm the plaintiff."  (*See* Compl. ¶¶ 5–7.)

## **CONCLUSION**

For the foregoing reasons, Excelcorp's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED IN PART** and **DENIED IN PART**. Accordingly, Count Five is **DISMISSED WITHOUT PREJUDICE.**

An appropriate Order accompanies this Letter Opinion.

s/ Wiliam J. Martini
**William J. Martini, U.S.D.J.**

cc: Hon. Ronald J. Hedges, U.S.M.J.